J-A26021-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMPREHENSIVE WOMEN'S HEALTH SERVICES, P.C. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| TIMOTHY G. GRUBE, D.O. | |
| Appellee | No. 268 MDA 2014 |

Appeal from the Order Entered January 31, 2014
In the Court of Common Pleas of Schuylkill County
Civil Division at No(s): S-22-2014

BEFORE:    BOWES, J., MUNDY, J., and JENKINS, J.

MEMORANDUM BY MUNDY, J.:                    **FILED DECEMBER 17, 2014**

Appellant, Comprehensive Women's Health Services, P.C. (the Corporation), appeals from the January 31, 2014 order denying its motion for preliminary injunction against Appellee, Timothy G. Grube, D.O. (Dr. Grube), as a remedy for his breach of the parties' employment contract.[1] After careful review, we affirm.

The trial court summarized the factual history of this case as follows.

> [Dr. Grube] is employed as a doctor with [the Corporation] since July of 2000. The Corporation was formed by [Robert M. Zimmerman, Jr., D.O. (Dr. Zimmerman)] on May 21, 1993. The Corporation employs two other obstetricians/gynecologists and

_____

[1] Pennsylvania Rule of Appellate Procedure 311(a)(4) provides that "[a]n order that grants or denies … an injunction," is subject to an appeal as of right. Pa.R.A.P. 311(a)(4).

they are [Dr. Zimmerman] and David P. Krewson, D.O. ("Dr. Krewson"). Dr. Grube was employed as an associate with the Corporation from July 2000 to 2004.

Sometime in 2004[,] Dr. Zimmerman, Dr. Krewson, and Dr. Grube (collectively "the doctors") began to look for a larger building to serve the expanding business of the Corporation. The doctors also agreed in 2004 that Dr. Grube would be a shareholder in the Corporation and a one-third owner of ZKG Realty. ZKG Realty was a limited liability company that was formed by the doctors on August 31, 2004 to purchase the real estate and lease it to the Corporation. On May 17, 2005, ZKG Realty purchased a property known as 171 Red Horse Road, Pottsville, Pennsylvania. When ZKG purchased the property[,] the doctors borrowed approximately 2.9 million dollars for the acquisition of the building and for renovations to the building. The mortgage on the new building was for 20 years and each doctor had to execute personal guarantees.

The doctors also entered into an employment agreement dated January 1, 2005[,] that outlined the terms of each doctor's employment with the Corporation. The employment agreement contained a restrictive covenant in paragraph 10(a) and 10(b)[,] which prohibited any doctor from opening a competing obstetric or gynecological practice within 15 miles of the Corporation for 3 years. The restrictive covenant also prohibited any of the doctors from soliciting patients of the Corporation and from inducing employees of the Corporation from leaving employment with the Corporation. Paragraph 10(b) of the restrictive covenant also provided that if an employee does not comply with the conditions contained in this sub-paragraph 10(b), then [the] employee shall not be entitled to receive deferred compensation pursuant to paragraph 9, and [the] employee shall return to the Corporation any amount of deferred compensation paid to the employee. [The] Corporation's right not to pay or to discontinue payment of deferred compensation

pursuant to this sub-paragraph 10(a), and to receive back from [the] employee any deferred compensation paid pursuant to paragraph 9, shall be [the] Corporation's sole remedy for [the] employee's failure to comply with all the conditions contained in this sub-paragraph 10(a).

On or about August 19, 2013, Dr. Grube gave written notice pursuant to paragraph 3(b) of the employment agreement that he would be resigning from the Corporation effective July 1, 2014. Several weeks after his written resignation, Dr. Grube orally informed Dr. Zimmerman and Dr. Krewson that his last day of work with the Corporation would be December 31, 2013. Dr. Grube was aware that his employment agreement had a restrictive covenant and it prohibited him from practicing within 15 miles of the Corporation for 3 years.

Dr. Grube purchased an office building at 219 South Balliet Street, Frackville, Pennsylvania, and Dr. Grube testified that he planned to open a new business[,] Grube Gynecology[,] at that address. The proposed office of Grube Gynecology at 219 South Balliet Street, Frackville, Pennsylvania, is approximately 10 to 12 miles from the Corporation's office and the Pottsville Hospital and would be in violation of the restrictive covenant that prohibits a practice within 15 miles. Dr. Grube has promised employment to at least 3 employees who were employed by the Corporation. In January 2014, after leaving his employment with the Corporation, Dr. Grube placed advertisements for current and future patients for Grube Gynecology both online and in the Pottsville Republican newspaper. []

Trial Court Opinion, 4/2/14, at 2-4.

On January 7, 2014, the Corporation filed a complaint, seeking an injunction against Dr. Grube for breach of contract and breach of fiduciary duty. Contemporaneously, the Corporation filed a motion for a preliminary

injunction, "which enforces the restrictive covenant in the [e]mployment [c]ontract between [t]he Corporation and [Dr. Grube] … for a period of three years, but at the very least, until July 1, 2014…." The trial court conducted a hearing on the motion for preliminary injunction on January 14, 2014. On January 31, 2014, the trial court entered an order denying the Corporation's motion for preliminary injunction, together with an opinion containing its findings of fact and legal conclusions. The Corporation filed a timely notice of appeal on February 7, 2014.[2]

On appeal, the Corporation raises the following issues for our review.

A. Did the trial court commit an abuse of discretion by finding that [Dr.] Grube's failure to abide by the notice provision of his employment contract did not immediately and irreparably harm the [C]orporation?

B. Did the trial court commit an abuse of discretion by not enjoing [sic] [Dr.] Grube's unlawful competition despite finding that the [C]orporation proved all elements required for a preliminary injunction?

C. [Did t]he trial court commit[] an abuse of discretion (1) by finding the employment agreement clear and unambiguous when both [the Corporation] and [Dr. Grube] offered reasonable, contradictory readings of the employment agreement, which rendered the employment agreement ambiguous, thus allowing [the Corporation] to introduce parol evidence to prove the employment agreement's terms and meanings and (2) by

_____

[2] The Corporation and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

ignoring the ample extrinsic evidence offered by [the Corporation] to prove the existence of a valid restrictive covenant, which was the most reasonable, probable and natural reading of the employement [sic] agreement, and, therefore, is the preferred reading under Pennsylvania law[?]

Corporation's Brief at 4.

Our standard of review of a challenge to a trial court's order refusing a preliminary injunction is well settled.

[O]n an appeal from the grant or denial of a preliminary injunction, we do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below. Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the Chancellor.

*Brayman Constr. Corp. v. Com., Dep't of Transp.*, 13 A.3d 925, 935-936 (Pa. 2011) (citations omitted). "The standard of review applicable to preliminary injunction matters … is highly deferential."[3] *Duquesne Light*

_____

[3] Our level of deference is further dependent on the nature of the preliminary injunction sought.

An injunction can be either preventative or mandatory in nature. While the purpose of all injunctions is to preserve the *status quo*, prohibitory injunctions do this by forbidding an act or acts while mandatory injunctions command the performance of some specific act that will maintain the relationship between the parties. Thus, preventative injunctions maintain the present status of the parties to the litigation by barring any action until the litigants'

*(Footnote Continued Next Page)*

*Co. v. Longue Vue Club*, 63 A.3d 270, 275 (Pa. Super. 2013) (citation omitted), *appeal denied*, 77 A.3d 1260 (Pa. 2013). "The purpose of a preliminary injunction is to prevent irreparable injury or gross injustice by preserving the *status quo* as it exists or as it previously existed before the acts complained of in the complaint." *Ambrogi v. Reber*, 932 A.2d 969, 974 (Pa. Super. 2007) (citation omitted), *appeal denied*, 952 A.2d 673 (Pa. 2008). "Any preliminary injunction is an extraordinary, interim remedy that should not be issued unless the moving party's right to relief is clear and the wrong to be remedied is manifest." *Id.*

> In ruling on a preliminary injunction request, a trial court has "apparently reasonable grounds" for its denial of relief where it properly finds that any one of the following "essential prerequisites" for a preliminary injunction is not satisfied. "For a preliminary injunction to issue, every one of the [ ] prerequisites must be established; if the petitioner fails to establish any one of them, there is no need to address the others." First, a party seeking a preliminary injunction must show that an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages. Second, the party must show that greater injury would result from refusing an injunction than

*(Footnote Continued)* ———————————

> rights are adjudicated on the merits. Mandatory injunctions require the performance of a positive action to preserve the *status quo,* are subject to greater scrutiny, and must be issued more cautiously than preventative injunctions.

*Shepherd v. Pittsburgh Glass Works, LLC*, 25 A.3d 1233, 1241 (Pa. Super. 2011) (internal quotation marks and citations omitted). The preliminary injunction sought by the Corporation in this case is prohibitory.

from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings. Third, the party must show that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct. Fourth, the party seeking an injunction must show that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits. Fifth, the party must show that the injunction it seeks is reasonably suited to abate the offending activity. Sixth and finally, the party seeking an injunction must show that a preliminary injunction will not adversely affect the public interest.

*Eckman v. Erie Ins. Exch.*, 21 A.3d 1203, 1206-1207 (Pa. Super. 2011) (emphases omitted), *quoting **Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mount, Inc.***, 828 A.2d 995, 1000–1001 (Pa. 2003) (citations and footnote omitted, quotation marks in original).

With these standards in mind, we turn to the issues raised by the Corporation in this appeal. In its complaint and motion for preliminary injunction, the Corporation averred Dr. Grube was in violation of the employment agreement in two basic respects, from which it suffered irreparable injury. Motion for Preliminary Injunction, 1/7/14, at 1-3. It first averred Dr. Grube was in violation of the section 3(b) notice requirement of his intent to terminate his employment. Complaint, 1/7/14, at 8, ¶¶ 41, 42. It next averred Dr. Grube violated the section 10 restrictive covenants by poaching employees and patients, and by establishing a competing practice within the proscribed temporal and geographical constrictions defined by the

covenant.  *Id.* at 8, ¶¶ 43, 44.  The Corporation's first issue on appeal faults the trial court's determination that, relative to the former alleged breach, it did not establish the above-cited first enumerated prerequisite to a grant of a preliminary injunction, to wit, "that an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages."  *Eckman*, *supra* at 1207; *see also* Corporation's Brief at 15-16.

The notice provision at issue provides as follows.

> Either party shall have the right to terminate this Agreement for any reason or no reason upon prior written notice to the other, as provided in this subparagraph (b). … Employee shall have the right to terminate this Agreement for any reason or no reason upon prior written notice to Corporation not later than September 1st of any year for such termination to be effective on July 1st of the succeeding year.

N.T., 1/14/14, at 164, Plaintiff's Exhibit 6, Employment Agreement at 2, ¶ 3(b).

The Corporation notes, "[a]s found by the trial court, the undisputed evidence is that the notice provision was in place for the protection of the Corporation in the event a doctor needed to be recruited and trained to replace a departing doctor."  Corporation's Brief at 16; *see also* Trial Court Opinion, 1/31/14, at 9.  Relative to this protective purpose, the trial court found that the Corporation "began negotiating With Dr. Chen in November 2013[,] and she started working with the Corporation on January 2, 2014.  Dr. Chen is a Board Certified obstetrician and gynecologist and will perform

the same duties that Dr. Grube performed." Trial Court Opinion, 1/31/14, at 9. "Here, the Corporation was able to hire a new doctor relatively quickly. The violation of paragraph 3(b) does not justify the granting of a preliminary injunction as requested by the Corporation until July 1, 2014." *Id.*

The Corporation asserts this reasoning was error.

> Anticipating a reasserted argument that the Corporation has hired a doctor to replace [Dr.] Grube, it is illogical to argue that a new OB/GYN, no matter how intelligent and dedicate[d], can replace[] a tenured doctor familiar with the Corporation's staff, functions, patients, hospital privileges, etc.[] Time is required to help hedge the harm of a departing employee, the exact reason the Corporation bargained for nine months to replace [Dr.] Grube.

Corporation's Brief at 18. The Corporation further surmises "the trial court reasoned that the facts put for [sic] by the Corporation did not satisfy the first elements of a preliminary injunction: immediate and irreparable harm." *Id.* at 15. We disagree. Rather, we conclude the trial court's analysis relates to the above-cited fifth prerequisite showing, "that the injunction it seeks is reasonably suited to abate the offending activity." *See Eckman*, *supra*.

Instantly, the Corporation has not demonstrated how the imposition of a preliminary injunction, prohibiting Dr. Grube from engaging in activity violative of the section 10 restrictive covenant, will mitigate the difficulties encountered by the Corporation in preparing Dr. Chen to be fully productive within the practice of the Corporation. As noted, the requirement of a nine-

month termination notice was intended to afford the Corporation time to find and train a replacement for a departing employee. Normally, attendant to that process would be the continued service of the departing employee to aid in that transition. While Dr. Grube's premature departure arguably made that transition more difficult, the preliminary injunction sought would not require Dr. Grube to resume his employment. Thus, a preliminary injunction in this case would not accelerate Dr. Chen's full integration into the practice or otherwise ameliorate the effect of Dr. Grube's early departure. Thus, we conclude the trial court possessed "reasonable grounds" for its denial of the Corporation's motion for a preliminary injunction based on Dr. Grube's breach of the employment agreement's notice provision. ***See Brayman Constr. Corp.***, ***supra***.

The Corporation argues that Dr. Grube "did not just leave early," but also "stole employees, patients and used his time outside the office to get together a competing corporation." Corporation's Brief at 18. This argument pertains to the Corporation's claim that a preliminary injunction against Dr. Grube was warranted for his breach of the employment contract's restrictive covenant, which we address *infra*.

Thus, we next address the Corporation's second and third issues together, which both allege the trial court erred in refusing to grant a preliminary injunction on the basis of Dr. Grube's violation of the restrictive

covenant in section 10 of the employment agreement.[4]  That section

provides as follows.

10. Restrictive Covenant.

(a) While an employee of Corporation, and for a period of three (3) years after the termination of Employee's employment by Corporation for any reason or no reason and so long as Corporation shall Continue to employ physicians for the practice of medicine, Employee shall not directly or indirectly induce or attempt to influence any employee of Corporation to terminate his or her

---

[4] Our Courts have recognized the enforceability of restrictive covenants.

Restrictive covenants, of which non-disclosure and non-competition covenants are the most frequently utilized, are commonly relied upon by employers to shield their protectable business interests.  The non-disclosure covenant limits the dissemination of proprietary information by a former employee, while the non-competition covenant precludes the former employee from competing with his prior employer for a specified period of time and within a precise geographic area.  In Pennsylvania, restrictive covenants are enforceable if they are incident to an employment relationship between the parties; the restrictions imposed by the covenant are reasonably necessary for the protection of the employer; and the restrictions imposed are reasonably limited in duration and geographic extent.  Our law permits equitable enforcement of employee covenants not to compete only so far as reasonably necessary for the protection of the employer.  However, restrictive covenants are not favored in Pennsylvania and have been historically viewed as a trade restraint that prevents a former employee from earning a living.

**Shepherd**, **supra** at  1244 (Pa. Super. 2011) (citation omitted).  The validity of the restrictive covenant at issue in this case is not challenged.

- 11 -

employment with Corporation and shall not engage in (as a principal, partner, director, officer, agent, employee, consultant or otherwise) or be financially interested in any medical practice offering obstetric or gynecologic cart within fifteen (15) miles of any office of Corporation existing on such date or any hospitals at which any employees of Corporation have staff privileges at the time of termination of Employee's employment (the "Restricted Area"). In addition, Employee shall resign all privileges at any hospital at, which the Corporation then maintains a practice and shall not reapply for such privileges for a period of three (3) years after the termination of Employee's employment. Employee acknowledges that the restrictions contained in this subparagraph 10(a), in view of the nature of the practice in which Corporation is engaged, are reasonable and necessary in order to protect the legitimate interests of Corporation and Employee will not challenge such restrictions in any court or administrative proceeding. If Employee does not comply with the conditions contained in this subparagraph 10(a), then Employee shall not be entitled to receive deferred compensation pursuant to Paragraph 9, and Employee promptly shall return to Corporation any amount of deferred compensation paid to Employee. Corporation's right not to pay, or to discontinue payment of, deferred compensation pursuant to this subparagraph 10(a), and to receive back from Employee any deferred compensation paid pursuant to Paragraph 9, **shall be Corporation's sole remedy for Employee's failure to comply with all of the conditions contained in this subparagraph 10(a).**

(b) Employee acknowledges that all patients are patients of Corporation and that all patient charts, lists, records and information are the sole and exclusive property of Corporation. Upon the termination of Employee's employment for any reason or no reason, Employee agrees not to initiate contact or to solicit any patients of Corporation and agrees that all such charts, lists, records and information shall remain the sole and confidential

property of Corporation. Employee acknowledges that the restrictions contained in this subparagraph 10(b), in view of the nature of the practice in which Corporation is engaged, are reasonable and necessary in order to protect the legitimate interests of Corporation and Employee will not challenge such restrictions in any court or administrative proceeding, If Employee does not comply with the conditions contained in this subparagraph 10(b), then Employee shall not be entitled to receive deferred compensation pursuant to Paragraph 9, and Employee promptly shall return to Corporation any amount of deferred compensation paid to Employee. Corporation's right not to pay, or to discontinue payment of, deferred compensation pursuant to this subparagraph 10(a)[sic], and to receive back from Employee any deferred compensation paid pursuant to Paragraph 9, **shall be Corporation's sole remedy for Employee's failure to comply with all of the conditions contained in this subparagraph 10(a)[sic].**

N.T., 1/14/14, at 164, Plaintiff's Exhibit 6, Employment Agreement at 10-11, ¶¶ 10(a), 10(b) (emphasis added). As referenced in paragraph 10, Paragraph 9 of the employment agreement describes an employee's eligibility to receive deferred compensation in pertinent part as follows.

9. Deferred Compensation Under Certain Circumstances. Employee shall receive deferred compensation, subject to the limitation contained in subparagraph 9(g), as hereinafter provided:

…

(b) Deferred Compensation in the Event of Termination of Employment by Employee. In the event that

(1) Employee ceases to be employed by Corporation for any reason other than

- 13 -

(A) for Cause pursuant to the provisions of Paragraph 8 hereof; (B) death; or (C) disability; and

(2) Employee has provided notice of termination in accordance with the terms of subparagraph 3(b) hereof, except as otherwise provided in subparagraph 9(b)(5), and or more, and

(3) Employee has been employed by Corporation for twenty (20) years

(4) Employee complies with the restrictions set forth in Paragraph 10 hereof, then Employee shall be entitled to deferred compensation in an amount equal to the Salary Continuation Amount. Such deferred compensation shall be payable in accordance with the provisions of subparagraph 9(d) hereof.

*Id.* at 7, ¶ 9(b).

Based on the evidence adduced at the January 14, 2014 hearing and the terms of the parties' employment agreement, the trial court determined as follows.

The [trial] court found that Dr. Grube violated the restrictive covenant in the employment agreement by opening a competing gynecological business within 15 miles of the Corporation, influencing employees of the Corporation to terminate their employment with the Corporation and soliciting patients of the Corporation. However, the [trial] court denied the [Corporation's] request for a preliminary injunction because the employment agreement clearly stated that the Corporation's sole remedy for [Dr. Grube's] failure to comply with the restrictive covenant was to not pay or to discontinue payment of deferred compensation. The [trial] court determined that the language of the employment agreement was unambiguous and therefore the [Corporation] was not likely to succeed on the merits.

- 14 -

Trial Court Opinion, 4/2/14, at 4. Thus, the trial court's determination, relative to Dr. Grube's violation of the restrictive covenant in the employment agreement, is premised on the Corporation's failure to establish that it is "likely to prevail on the merits," the above-cited fourth prerequisite to a grant of a preliminary injunction. **See Eckman**, **supra**.

The Corporation argues that the trial court's finding that Dr. Grube was in violation of the restrictive covenant was all that was required to satisfy this showing. The Corporation argues that given the clear finding that Dr. Grube was in breach of the restrictive covenant, "it is not a matter of if, but a matter of when the Corporation will prevail on the merits." The Corporation's Brief at 22. We disagree.

The relief sought in the Corporation's complaint is an injunction. Complaint, 1/7/14, at 11. The requirement that a party seeking a preliminary injunction must first demonstrate a likelihood it will prevail includes a showing "that the activity it seeks to restrain is actionable, **that its right to relief is clear**, and that the wrong is manifest." **Eckman**, **supra** (emphasis added). Therefore, it is not enough to establish that Dr. Grube is in breach of the employment agreement if the right to the relief sought is not clear. Accordingly, we discern no abuse of discretion in the trial court's determination that the Corporation did not establish a likelihood it will prevail on the merits based solely on the fact that Dr. Grube was in

breach of the restrictive covenant imposed by the employment agreement. *See Id.*

This leads us to the Corporation's final issue, alleging the trial court erred as a matter of law in its interpretation of the parties' employment agreement. Corporation's Brief at 22. Specifically, the Corporation contends the trial court failed to construe sections 9 and 10 of the employment agreement together to avoid an unreasonable interpretation. *Id.* at 25-26. Alternatively, the Corporation argues, "[b]ecause the Employment Agreement was ambiguous, the trial court abused its discretion by not considering the parol evidence introduced by the Corporation to explain the terms of the Employment Agreement."[5] *Id.* at 26.

> The interpretation of any contract is a question of law and this Court's scope of review is plenary. Moreover, we need not defer to the conclusions of the trial court and are free to draw our own inferences. In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement. When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding. This Court must construe the contract only as written and may not modify the plain meaning under the guise of interpretation.

---

[5] The trial court permitted the parties to present parol evidence of their intent with respect to the provisions of the employment agreement in question, but ultimately did not consider that testimony in light of its conclusion that the agreement was not ambiguous. *See generally* N.T., 1/14/14.

*Sw. Energy Prod. Co. v. Forest Res., LLC*, 83 A.3d 177, 187 (Pa. Super. 2013), *quoting*, *Humberston v. Chevron U.S.A., Inc.*, 75 A.3d 504, 509–510 (Pa. Super. 2013) *appeal denied*, 96 A.3d 1029 (Pa. 2014). "If left undefined, the words of a contract are to be given their ordinary meaning." *Lenau v. CoeXprise, Inc.*, --- A.3d ---, 2014 WL 4696215, *5 (Pa. Super. 2014) (citation omitted).

> When, however, an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances.
>
> With specific reference to what constitutes "ambiguity" in the context of contract interpretation, our Supreme Court has opined as follows:
>
> Contractual language is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This is not a question to be resolved in a vacuum. Rather, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. We will not, however, distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity.
>
> > Additionally, it is axiomatic that contractual clauses must be construed, whenever possible, in a manner that effectuates all of the clauses being considered. It is fundamental that one part of a contract cannot be so interpreted as to annul another part and that writings which comprise an agreement must be interpreted as a whole.

*Id.* (internal quotation marks and citations omitted).

- 17 -

The Corporation argues that the last sentences of sections 10(a) and 10(b) of the employment agreement that define the Corporation's "sole remedy" for breach by an employee of the restrictive covenant, should be read in context with section 9(b), which outlines the rights of an employee, who terminates his or her employment, to deferred compensation. Corporation's Brief at 24-25. The Corporation argues that because an employee is only eligible for deferred compensation under section 9(b)(3) after 20 years of employment, the "sole" remedy clauses of section 10(a) and 10(b) should be interpreted to apply only to employees with 20 years or more of employment. *Id.* at 25

> What the trial court found is that an employee of the Corporation for less than 20 years has NO restrictive covenant, while a tenured, over twenty-year employee of the Corporation is slapped with a restrictive covenant, penalized by the withholding of deferred compensation. This meaning is entirely unreasonable, makes no sense, and focuses solely on the word "sole" while ignoring the interaction of Paragraphs 9 and 10.

*Id.* at 26 (emphasis in original).

Thus, under the interpretation urged by the Corporation, an employee in violation of section 10, who had less than 20 years of employment, would be subject to a full range of enforcement or damage actions by the Corporation, while an employee in violation of section 10, who had 20 years or more of employment, would be subject only to loss of deferred compensation as a consequence of the violation. The trial court rejected the

Corporation's position. "The [trial] court finds that it is the [Corporation's] interpretation of the employment agreement that is nonsensical." Trial Court Opinion, 4/2/14, at 11.

> Contrary to [the Corporation's] argument, however, [the trial] court did not find that the restrictive covenant only applies after twenty years. The [trial] court held that the employment agreement is unambiguous that Dr. Grube had a restrictive covenant. The [trial] court also held that the employment agreement clearly and unambiguously stated what the Corporation's remedy is if Dr. Grube violated the restrictive covenant. The Corporation's sole remedy is that Dr. Grube is not entitled to deferred compensation.

*Id.* at 5.

We agree with the trial court that section 10 of the employment agreement is clear and unambiguous in providing a sole remedy to the Corporation for an employee's violation of the restrictive covenant. The Corporation's interpretation requires the clause "sole remedy" to be qualified according to unspecified classes of employees in a manner at odds with the plain meaning of the language employed. ***See Lenau***, ***supra***. That the Corporation is unsatisfied with the perceived inadequacy of its remedy is not a ground to find an ambiguity.

> The fact that parties to a contract disagree upon its proper interpretation does not necessarily render the writing ambiguous. [R]esort to the plain meaning of language hinders parties dissatisfied with their agreement from creating a myth as to the true meaning of the agreement through subsequently exposed extrinsic evidence…. In holding that an ambiguity is present in an agreement, a court must

> not rely upon a strained contrivancy to establish one; scarcely an agreement could be conceived that might not be unreasonably contrived into the appearance of ambiguity.

*Halpin v. LaSalle Univ.*, 639 A.2d 37, 39 (Pa. Super. 1994) (internal quotation marks and citations omitted), *appeal denied*, 668 A.2d 1133 (Pa. 1995). We therefore conclude that the trial court had "reasonable grounds" to deny the Corporation's motion for a preliminary injunction on the basis of Dr. Grube's breach of the employment agreement's restrictive covenant. *See Brayman Const. Corp.*, *supra*.

Based on the foregoing, we conclude the trial court did not abuse its discretion or commit an error of law in denying the Corporation's motion for preliminary injunction. Because reasonable grounds exist for said denial, we affirm the trial court's January 31, 2014 order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/17/2014